REVISED JUNE 29, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30019
_____


PAUL R PIAZZA

                    Plaintiff - Appellant

        v.

JEFF MAYNE

                    Defendant - Appellee

_____

        Appeals from the United States District Court
            for the Eastern District of Louisiana
_____
                      June 26, 2000
Before KING, Chief Judge, and DUHÉ and DeMOSS, Circuit Judges.

PER CURIAM:

    Plaintiff-Appellant appeals the district court's grant of

summary judgment in favor of Defendant-Appellee in this section

1983 action for malicious prosecution in violation of the

Fourteenth Amendment.  We affirm.


        I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

    On July 27, 1993, Defendant-Appellee Jeff Mayne, an

enforcement agent with the Louisiana Department of Wildlife and

1

Fisheries (the "Department"), inspected a truck containing a 1,121-pound shipment of hybrid striped bass (the "July 27 shipment"). This shipment belonged to Plaintiff-Appellant Paul Piazza, a licensed wholesale seafood distributor. Mayne contacted the Department. After some initial confusion, he discovered that on July 21, 1993, Piazza reported a purchase of 2,543 pounds of hybrid striped bass from the Silver Streak Bass Company, of Seguin, Texas (the "July 21 purchase"). However, Mayne believed that the fish looked "too fresh" to belong to the six-day old July 21 purchase. Consequently, he seized the truckload of fish.

Mayne took a sample from the seized shipment, which he brought to John Burdon and Howard Ragillio, biologists who worked for the Department. Burdon and Ragillio examined the fish, and opined that the fish had been harvested less than 72 hours earlier. Like Mayne, they concluded that the fish was "too fresh" to have come from the July 21 purchase. On July 29, the shipment of fish was sold at auction.

On August 3, 1993, Mayne visited Piazza's place of business in order to inspect his records. According to Piazza, Mayne inspected and confiscated copies of all of Piazza's records of sales of hybrid striped bass from June 30 to July 31, 1993. However, Mayne only asked for the purchase records from the Silver Streak Bass Co., the source of the July 21 purchase, for

2

that same period.  Piazza allegedly twice told Mayne that he also purchased hybrid striped bass from other suppliers, and offered to show Mayne records of those purchases.  Piazza contends that Mayne refused to inspect or accept copies of any such records.[1] After examining the records that he had requested, Mayne arrived at the conclusion that between June 30 and July 31, 1993, Piazza sold 12,573 pounds of hybrid striped bass but reported purchasing only 9,840 pounds.  Mayne subsequently issued a citation to Piazza for violating Louisiana Revised Statute 56:327(A).[2]

On November 1, 1993, Piazza faxed a copy of records of his July 1993 purchases of 2,809 pounds of hybrid striped bass from Bayou Blue Mariculture, a Louisiana aquaculture producer, to the Louisiana district court where his trial was scheduled for the following day.  Piazza presented these records to Mayne and the district attorney, but Mayne persisted in refusing to review them.

---

[1]  In his reply to Piazza's opposition to his motion for summary judgment, Mayne disputed that Piazza offered to show him records of in-state sales but stated that he accepted Piazza's version as true for the purposes of the motion.

[2]  Section 327(A)(1) provides that "[n]o person shall purchase, sell, exchange, or offer for sale or exchange, or possess or import with intent to sell or exchange" fish belonging to the species enumerated in § 327(A)(1)(a).  LA. REV. STAT. ANN. 56:327(A) (West 2000).  The latter provision creates an exception for "hybrid striped bass (striped bass-white bass cross or striped bass-yellow bass cross) . . . which are produced and regulated pursuant to provisions of [§ 411] et seq. governing domestic fish farming."  LA. REV. STAT. ANN. 56:327(A)(1)(a) (West 2000).

On November 2, 1993, Piazza was tried for the offense of selling and/or purchasing freshwater game fish in violation of § 327(A) before the 22nd Judicial District Court of Louisiana. According to the trial judge, the case "'boil[ed] down to simply a matter of whose experts convince[d] the Court and convince[d] the Court beyond a reasonable doubt that their position [was] correct.'" State v. Piazza, 668 So.2d 1125, 1126 (La. 1996) ("Piazza II"). For its part, the State submitted evidence that Mayne's decision to seize the July 27 shipment was based on his examination of the shipment and subsequent conclusion that the fish were too fresh to have belonged to the July 21 purchase from Texas. See State v. Piazza, 655 So.2d 1357, 1361 (La. App. 1 Cir. 1995), rev'd by 668 So.2d 1125 (La. 1996) ("Piazza I"). In addition, John Burdon and Howard Ragillio testified as expert witnesses that they had examined samples from the seized shipment and concluded that the fish had been caught seventy-two hours or less prior to their examination. See id. at 1362. The State also submitted a contemporaneous report by the two biologists that described the physical characteristics of the fish and stated the same conclusion to which the biologists testified at trial. See id. at 1361-62.

In his defense, Piazza testified that the fish from the seized shipment were part of the July 21 purchase. See id. at 1363. He described the procedure his company used for packaging fish, and gave his opinion as an expert in fish observation that

4

"to someone observing his fish, who was unfamiliar with the procedures he uses in handling and packaging fish, the fish would appear to be 'fresher longer.'" Id. at 1363. The defense also introduced a letter from Michael Russell, president of Central Analytical Laboratories, Inc., to whom Piazza had sent samples of (1) freshly caught fish, (2) fish from the July 21 purchase that had not yet been sold, and (3) fish from the seized shipment. See id. at 1363-64. The letter stated that the first sample appeared to be freshly caught, but that "it could not be determined with any exactness how much time had elapsed since the fish in either [the second or third] sample had been caught." Id. at 1364. Piazza also introduced the records of his July purchases of hybrid striped bass from Bayou Blue Mariculture. Nevertheless, Piazza was convicted. He was sentenced to 30 days in jail, fined $400, and had his license as a wholesale fish distributor revoked. Immediately following his conviction, Piazza was taken to the St. Tammany Parish Jail. He was booked, photographed, fingerprinted, and then released on his own recognizance. Piazza spent between forty minutes and an hour in custody.

Piazza appealed his conviction. By means of two of his assignments of error before the Court of Appeal of Louisiana, Piazza argued that the evidence was insufficient to prove that he had sold or purchased freshwater game fish in violation of § 327(A). See Piazza I, 655 So.2d at 1364. Specifically, Piazza

argued that "some of the [seized] fish were aquaculturally-raised fish imported into [Louisiana] pursuant to [§ 327.1]," [3] and thus, their purchase or sale did not violate the statute. [4] Id. at 1366. As a preliminary matter, the Court of Appeal of Louisiana determined that § 327.1 established an exception to § 327(A), and interpreted § 327.1 to authorize "the importation of

---

[3] LA. REV. STAT. 56:327.1 provides:

> A. Notwithstanding the provisions of [§ 327(A)(1)(b)(i)] . . . cultured fish raised in an aquacultural environment may be imported into this state. No live fish shall be imported under this Section.
>
> B. As used in this Section, the following terms shall have the following meanings:
>
> (1) "Aquaculture" means aquaculture as defined in [§ 356].
>
> (2) "Cultured fish" means saltwater game fish covered by the provisions of [§ 327(A)(1)(b)(i)] or shellfish.
>
> C.(1) With the exception of largemouth bass (Micropterus salmoides), spotted bass (Micropterus punctulatus), shadow bass (Ambloplites ariommus), black or white crappie (Pomoxis nigromaculatus, P. annularis), white bass (Morone chrysops), yellow bass (Morone mississippiensi), striped bass (Morone saxatilis), and any species of bream (Lepomis supp. and Centrarchus sp.), cultured fish, raised in an aquacultural environment, may be imported into this state for sale at wholesale or retail.

[4] Piazza also argued that (1) the state had not proved that hybrid striped bass constituted freshwater game fish, and (2) some of the seized fish were raised in Louisiana fish farms. See Piazza I, 655 So.2d at 1365. The court of appeal summarily rejected the first argument, and rejected the second as contrary to the trial court's determination that the State's fish experts were more credible than Piazza's. See id. at 1365, 1366.

6

aquaculturally-raised hybrid striped bass into [Louisiana] for sale at wholesale or retail." Id. at 1367. However, the court of appeal noted that the trial court

> accepted the testimony given by Burdon and Ragillio, and concluded that the seized fish were not part of the shipment of fish reported in to the Department on July 21. <u>Thus, the defendant failed to establish that some of the fish seized (i.e. those fish imported from Texas) were aquaculturally-raised fish</u>.

Id. (emphasis added). The court of appeal therefore found that "any rational trier of fact could have concluded that the evidence proved beyond a reasonable doubt that defendant sold freshwater game fish, hybrid striped bass, conduct proscribed by [§ 367(A)(1)(a)]." Id. at 1367-68.

Piazza then filed a petition for certiorari to the Louisiana Supreme Court, which granted review. See Piazza II. The Louisiana Supreme Court held that, under § 327, "the sale or importation of *any* fish belonging to a *species* of freshwater or saltwater game fish found in the waters of Louisiana is prohibited under all but specifically defined circumstances." Id. at 1127 (emphasis in the original). The court further held that the exceptions to the statute, such as the exception permitting "the importation of freshwater or saltwater game fish . . . harvested in a licensed aquaculture program of another state" created by § 327.1, are affirmative defenses that must be proved by a preponderance of the evidence at trial. Id. (citations omitted).

7

The court then reviewed the sufficiency of the evidence with regard to Piazza's affirmative defense that the fish seized by Mayne originated in a lawful shipment of aquaculturally harvested fish from Texas. See id. at 1128. The court determined that the testimony of the Department agents who had opined that the fish were too fresh did not offer "an articulable basis for finding that the inspection of [the fish] . . . provided a reliable indicator and a scientific basis for determining the shipment's overall age." Id. The court found, moreover, that Piazza had rebutted this evidence with expert testimony. See id. Furthermore, the court observed that Piazza had adduced evidence of having received a large shipment of hybrid striped bass from Texas five days before the shipment Mayne seized was sent out. See id. The court also noted that Piazza had introduced records that accounted for the discrepancy Mayne found between the amount of fish sold and the amount of fish purchased. See id. Based on this evidence, the supreme court concluded, "any rational trier of fact would have found that [the July 21 purchase and the seized July 27 shipment] were probably connected." Id. As a result, the court found, no rational trier of fact could have failed to conclude that Piazza had proved that he had obtained the fish seized on July 27 by lawful means by a preponderance of the evidence. See id. at 1129 (citing State v. Peters, 643 So.2d 1222 (La. 1994); State v. Lombard, 486 So.2d 106 (La. 1986)). The court subsequently reversed Piazza's conviction. See id.

8

On January 24, 1997, Piazza commenced this action under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Louisiana, alleging malicious prosecution in violation of the Fourth and Fourteenth Amendments. In his complaint, he alleged that Mayne "knew or should have known, that the fish he seized had been lawfully imported into Louisiana by plaintiff less than six days prior to their seizure," and thus, that Mayne had issued a citation for violation of § 327(A) maliciously and without probable cause. On December 8, 1997, Mayne filed a motion for summary judgment on the grounds of qualified immunity. Piazza opposed the motion, and both parties, upon the district court's request, submitted additional briefing on the issues of probable cause and malice.

The district court found that Mayne's conduct did not violate the Constitution and thus that Mayne was entitled to qualified immunity. See Piazza v. Mayne, 23 F.Supp.2d 658, 661 (E.D. La. 1998)("Piazza III"). The court noted that the Supreme Court of Louisiana had "determined that Mayne had probable cause to issue a citation given that the elements of the crime -- namely, possession with intent to sell certain freshwater game fish -- were easily satisfied." Id. at 662. It further reasoned that although Piazza was absolved of liability because he had proved an affirmative defense, the affirmative defense did not negate the conduct that established probable cause at the time

9

the citation was issued.  See id.  In the absence of directly controlling Fifth Circuit precedent, the district court was persuaded by decisions from the Seventh Circuit,[5] Tenth Circuit,[6] and the District of Hawaii[7] holding that affirmative defenses do not bear on the probable cause analysis.  See id.  Accordingly, the court found that Mayne had probable cause to issue the citation, regardless of whether Mayne knew of any additional purchase records.  See id.

The district court further concluded that even if Piazza had sufficiently established a constitutional violation, Mayne was nevertheless entitled to qualified immunity because his conduct was objectively reasonable.  See id.  As a result, the court granted Mayne's motion for summary judgment.  On December 1, 1998, the court entered a final judgment in favor of Mayne on Piazza's § 1983 claims, and dismissed Piazza's state law claims without prejudice.  Piazza timely appeals.

## II.  DISCUSSION

### A.  Standard of Review

---

[5]  Humphrey v. Staszak, 148 F.3d 719 (7th Cir. 1998); Simmons v. Pryor, 26 F. 3rd 650 (7th Cir. 1994), cert. denied, 511 U.S. 1082 (1994).

[6]  DeLoach v. Bevers, 922 F. 2d 618 (10th Cir. 1990), cert. denied, 502 U.S. 814 (1991).

[7]  Carnell v. Grimm, 872 F.Supp. 746 (D. Haw. 1994), aff'd in part, appeal dismissed in part, 74 F.3d 977 (9th Cir. 1996).

We review the grant of summary judgment de novo, applying the same criteria employed by the district court in the first instance.  See Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994).  To prevail on summary judgment, a movant must demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  If the movant succeeds in making that showing, the nonmoving party must set forth specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings. See FED. R. CIV. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).  We review the evidence bearing on these facts, and the inferences to be drawn therefrom, in the light most favorable to the non-moving party.  See Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir. 1993).

B.  Qualified Immunity

"[G]overnment officials performing discretionary functions[] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted).  Determining whether a public official is

11

entitled to qualified immunity from liability under § 1983 is potentially a two-step inquiry. First, the court must decide whether the official's conduct violated a right recognized under current constitutional law, and whether that right was clearly established at the time of the official's conduct. See Siegert v. Gilley, 500 U.S. 226, 231 (1991); Jones v. Collins, 132 F.3d 1048, 1052 (5th Cir. 1998) (citing Siegert). If the court finds that the official's conduct violated a clearly established constitutional right, the court must then consider whether the official is nonetheless entitled to qualified immunity because his conduct was objectively reasonable in light of the law at the time the conduct occurred. See Jones, 132 F.3d at 1052 (citing Nerren v. Livingston Police Dep't, 86 F.3d 469, 473 (5th Cir. 1996)). We need not reach the second step of this analysis because the summary judgment evidence, construed in the light most favorable to Piazza, indicates that Mayne's conduct did not violate Piazza's Fourth Amendment right to be free from malicious prosecution.

### 1. Violation of a Constitutional Right

This court has recognized that malicious prosecution implicates rights guaranteed by the Fourth Amendment and is therefore actionable under § 1983. See Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1303 (5th Cir. 1995). We recognize that there is some authority in our circuit for the proposition

12

that the reviewing court looks to the elements of this tort as defined under the law of the relevant state in determining whether a plaintiff has established a claim of malicious prosecution under § 1983.  See, e.g., Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999) (defining malicious prosecution under Texas state law).  Furthermore, Piazza asserts on appeal (and Mayne does not dispute) that the requirements of the state law tort and the constitutional tort are the same.  Thus, we assume without deciding that the requirements are coextensive in the context of a § 1983 action.

As a result, Piazza must establish the elements of malicious prosecution under Louisiana law in order to avoid summary judgment on the first step of the qualified immunity inquiry. Those elements are as follows:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff.

Miller v. East Baton Rouge Parish Sheriff's Dep't, 511 So.2d 446, 452 (La. 1987) (citations omitted).  The parties only dispute whether Piazza has established the fourth element:  the absence of probable cause.

### 2.  Probable Cause

Piazza attached affidavits to his opposition to Mayne's

13

summary judgment motion, stating that he told Mayne that he had purchased hybrid striped bass from other aquaculture producers besides the Silver Streak Bass Company while Mayne was at Piazza's office.  This evidence also indicates that Piazza offered to show Mayne the records of those purchases, but that Mayne refused to examine them prior to issuing the citation.  Piazza argues on appeal that these records established that he did not violate § 327(A), that Mayne knew that the records exonerated Piazza at the time he issued the citation,[8] and that Mayne's refusal to consider them deprives Mayne of qualified immunity.  We disagree.

The Supreme Court has defined probable cause as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an

---

[8]  Mayne stated in his motion for summary judgment that he based his belief that Piazza had violated § 327(A) on (1) his observation of the hybrid striped bass and conclusion, which was confirmed by two Department biologists, that the fish were "too fresh" to have belonged to the July 21 purchase; and (2) his realization that, according to the records at Piazza's place of business, a discrepancy of 2,733 more pounds of hybrid striped bass sold than purchased existed for the June 30 – July 31 period.  However, instead of attaching an affidavit, as is usual under Rule 56, he quoted the factual background section of the Louisiana Supreme Court's decision in Piazza II (which, in turn, is based on Mayne's testimony at Piazza's trial) in support of these facts.  Piazza did not object in the district court to Mayne's use of the Louisiana Supreme Court decision or to the absence of an affidavit.  His objection here is too late.

14

offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (defining probable cause to justify arrest) (citations omitted); see also Miller, 511 So.2d at 452 (defining probable cause for the purposes of malicious prosecution claims). When determining whether a reasonably cautious person would have believed that a violation occurred, we consider the expertise and experience of law enforcement officials. See United States v. Garcia, 179 F.3d 265, 268 (5th Cir, 1999), cert. denied, – S.Ct. –, 2000 WL 625832 (June 5, 2000) (citing United States v. Ortiz, 422 U.S. 891, 897 (1975)). Furthermore, probable cause "does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983). Rather, the probable cause analysis only requires that we find a basis for an officer to believe to a "fair probability" that a violation occurred. See United States v. Antone, 753 F.2d 1301, 1304 (5th Cir. 1985) (citations omitted). To the extent that the underlying facts are undisputed, we may resolve questions of probable cause as questions of law. See Blackwell v. Barton, 34 F.2d 298, 305 (5th Cir. 1994) (citations omitted).

According to Piazza, the records documented purchases from fish farms other than the Silver Streak Bass Company and would have demonstrated that Piazza purchased more hybrid striped bass than he sold between June 30 and July 31, 1993. In determining whether this evidence establishes that Mayne lacked probable

15

cause to believe that Piazza violated § 327(A), we are guided by the Louisiana state courts' decisions in Piazza I and II. It appears to us that the presence or absence of a discrepancy between purchases and sales is only marginally relevant to the question of whether a violation of § 327(A) occurred, as defined by those courts on the circumstances present here. In Piazza II, the Louisiana Supreme Court's decision to reverse Piazza's conviction turned on its finding that (1) the July 21 purchase was large enough to account for the entire July 27 shipment, and (2) Piazza had rebutted the State's weak evidence that the seized fish appeared "too fresh" to have belonged to the July 21 purchase with testimony regarding his techniques for preserving the fish. See Piazza II, 668 So.2d at 1128. Indeed, the supreme court found that the evidence proving that no discrepancy existed merely served to corroborate the evidence of critical import: Piazza's testimony that the fish from the July 27 shipment originated from the July 21 purchase. See id. In Piazza I, moreover, the Louisiana Court of Appeal utterly failed to mention the records of in-state purchases that accounted for the discrepancy between sales and purchases when discussing the trial court's conclusion that the seized fish were not part of the July 21 shipment, and thus not imported aquaculturally raised fish falling under an exception to § 327(A). See Piazza I, 655 So.2d at 1367. These decisions illustrate that the determination of whether or not Piazza violated § 327(A) hinged on evidence

16

establishing that the hybrid striped bass had been purchased from an out-of-state fish farm, rather than evidence establishing that Piazza had purchased as much fish as he sold during a particular period.

We are persuaded that the latter evidence is likewise of little value in determining whether Mayne had probable cause to believe that Piazza's possession of the hybrid striped bass violated the statute. Thus, we decline to find, as Piazza suggests we should, that Mayne's implicit knowledge of the content of these records negated his probable cause to believe that Piazza had violated § 327(A). Instead, we conclude that Piazza has failed to demonstrate that Mayne's conduct violated a constitutional right, and that the district court properly entered summary judgment against Piazza. This conclusion obviates the need to consider whether, as a general principle, facts supporting the existence of an affirmative defense are relevant to the determination of probable cause. We therefore decline to adopt the district court's broad holding on that issue.

## IV. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment to Defendant-Appellee Mayne is AFFIRMED.

17