UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-30234

_____


STANLEY GORDY,

Plaintiff-Appellee,

versus

WILLIAM BURNS, Detective/Agent, Individually and
in his official capacity as an officer of the
Jefferson Parish Sheriff's Department; ET AL.,

Defendants,

WILLIAM BURNS, Detective/Agent, Individually and
in his official capacity as an officer of the
Jefferson Parish Sheriff's Department;

R. GERDES, Detective/Agent, Individually and
in his official capacity as an officer of the
Jefferson Parish Sheriff's Department;

G. SIMONE, Lieutenant, Individually and
in his official capacity as an officer of the
Jefferson Parish Sheriff's Department; and

HARRY LEE, Individually and
in his official capacity as the sheriff of the
Jefferson Parish Sheriff's Department,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans Division

_____

June 17, 2002

Before JONES, EMILIO M. GARZA, and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Stanley Gordy filed this § 1983 action against officers of the Jefferson Parish Sheriff's Department. Gordy's sole viable claim was for malicious prosecution arising from his arrest for possession of marijuana with intent to distribute. Following a non-jury trial, a magistrate judge entered judgment for Gordy and awarded him $20,000 in damages. Having reviewed the record, we conclude that the officers are entitled to judgment as a matter of law because there was probable cause to support the drug charges.

## I. BACKGROUND

In late August 1997, Lieutenant Glenn Davis of the Jefferson Parish Sheriff's Department received a telephone call from an agent of the federal Drug Enforcement Administration. The DEA agent informed Lieutenant Davis that United Parcel Service employees in California had discovered a package containing approximately 20 pounds of marijuana addressed to "C. Charles" at an apartment in Metairie, Louisiana. Davis drove to the apartment and observed that the name on the mailbox was "M. Gordy" (rather than "C. Charles"), but he assumed that the addressee's name was fictitious. Later that evening, Lieutenant Davis submitted an affidavit and application for a search warrant to a Jefferson Parish district judge. The affidavit read in part, "[U]pon arrival of the package containing the marijuana[,] a controlled delivery

2

will be attempted. . . . Officers request that a search warrant be issued subsequent to this delivery." The judge issued the search warrant.

Lieutenant Gerard Simone and Officers William Burns and Robert Gerdes delivered the package on September 2, 1997. There is conflicting testimony as to whether a UPS agent went to the door or whether Lieutenant Simone posed as a UPS agent. The key fact, however, is that defendant Stanley Gordy accepted the package from someone he believed was a UPS delivery-man. Gordy admits signing the receipt using his nickname, "Chuck Gordy," but he insists that he did not look carefully at the package before signing for it.

The officers waited a few minutes before approaching the apartment to execute the search warrant. It is undisputed that Gordy stepped out of the apartment, paused for a moment, and then went back inside and locked the door. Gordy testified that he was going to McDonald's when he realized that he had no cash, so he went to retrieve his wallet. The officers testified that Gordy scampered inside after making eye contact with the officers, who were wearing "raid jackets" identifying them as policemen. The officers forced their way into the apartment, arrested Gordy, took custody of the package, and searched the apartment before taking Gordy to the sheriff's office.

Officer Burns prepared the police report on behalf of the officers. Officer Burns's report omitted certain facts, most notably that Gordy had not opened the package and that the package

3

contained approximately 15 pounds of marijuana instead of 20 pounds, as the officers had expected.

Gordy was charged with possession of marijuana with intent to distribute, and a bill of information was filed. However, the district attorney ultimately decided not to prosecute the case and issued a *nolle prosequi* on March 2, 1998. The record of these state court proceedings was expunged at Gordy's request, and neither party introduced evidence indicating why the district attorney abandoned the prosecution.

On March 1, 1999, Gordy filed this action under 42 U.S.C. § 1983 against Jefferson Parish Sheriff Harry Lee, Lieutenant Simone, and Officers Burns and Gerdes. Gordy's complaint included claims for false arrest, unlawful search and seizure, false imprisonment, excessive force, and malicious prosecution -- all in violation of the Fourth and Fourteenth Amendments. The parties agreed to a non-jury trial before a magistrate judge. See 28 U.S.C. § 636(c).

The magistrate judge dismissed all of Gordy's claims except malicious prosecution as time-barred. See Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998)("[F]or a § 1983 action, the court looks to the forum state's personal-injury limitations period. In Louisiana, that period is one year."). The magistrate judge also dismissed all claims against Sheriff Lee because there was no evidence that Lee was personally involved or that the

4

officers were acting pursuant to a policy implemented by the sheriff. See Sanders v. English, 950 F.2d 1152, 1159-60 (5th Cir. 1992). Gordy has not appealed these rulings.

The sole claim at trial, then, was malicious prosecution. Gordy argued that he was prosecuted because the officers maliciously provided false or misleading information to the district attorney. The magistrate judge agreed. After ruling that the officers were not entitled to qualified immunity, the magistrate judge entered judgment for Gordy and awarded him $12,000 in compensatory damages and $8,000 in punitive damages. This appeal followed.

## II. DISCUSSION

### A

It would be an understatement to say that this circuit's caselaw regarding so-called "Fourth Amendment malicious prosecution" claims under § 1983 is both confused and confusing. See, e.g., Kerr v. Lyford, 171 F.3d 330, 342-43 (5th Cir. 1999) (Jones, J., concurring). Deciding the issue presented in this case forces us to return to first principles.

Unquestionably, state-law tort claims -- such as the common-law tort of malicious prosecution -- are not, by themselves, actionable under § 1983. Price v. Roark, 256 F.3d 364, 370 (5th Cir. 2001)(citing Nesmith v. Taylor, 715 F.2d 194, 196 (5th Cir. 1983)). Because § 1983 requires some showing that the plaintiff

5

has been deprived of a federal right, but no constitutional provision specifically guarantees against the institution of groundless criminal prosecutions, a "malicious prosecution" claim under § 1983 is a misnomer.

Nevertheless, the rule in this circuit is that the elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of "Fourth Amendment malicious prosecution" are coextensive. See Piazza v. Mayne, 217 F.3d 239, 245 (5th Cir. 2000). Although Piazza purported not to decide this issue, the rule is rooted firmly in Fifth Circuit precedent. See Evans v. Ball, 168 F.3d 856, 863 n.9 (5th Cir. 1999)("[M]alicious prosecution may be a constitutional violation, but only if all of its common law elements are established. . . ."); Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999)(same).

Most other circuits emphasize, however, that a malicious prosecution claim under § 1983 is more appropriately characterized as "a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2001)(citing decisions from the First, Second, Seventh, Tenth, and Eleventh Circuits). As the Eleventh Circuit succinctly put it, the "federal 'right' to be free from malicious prosecution is actually a description of the right to be free from an unlawful seizure which is part of the prosecution." Whiting v. Traylor, 85 F.3d 581, 584 n.4 (11th Cir. 1996); see also Singer v. Fulton County Sheriff, 63 F.3d 110, 116

6

(2d Cir. 1995)("The Fourth Amendment right implicated in a malicious prosecution action is . . . the right to be free of unreasonable or unwarranted restraints on personal liberty."); <u>Albright v. Oliver</u>, 510 U.S. 266, 274, 114 S.Ct. 807, 813 (1994)(plurality opinion) (emphasizing the Fourth Amendment's concern about "pretrial deprivations of liberty").[1]  In most other circuits, a § 1983 plaintiff who alleges malicious prosecution must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to certain elements of the common-law tort of malicious prosecution.[2]

But in the Fifth Circuit, a plaintiff in a § 1983 malicious prosecution action need establish only the elements of common-law malicious prosecution.  This circuit repeatedly has indicated -- without explanation -- that courts must look to the elements of a malicious prosecution claim under the law of the

---

[1]    It remains unclear whether <u>Albright</u> will be extended to approve the constitutionalizing of malicious prosecution claims, <u>see</u> <u>Kerr</u>, <u>supra</u>, (Jones, J. concurring), but the federal courts have so applied <u>Albright</u>.

[2]    In <u>Price</u>, this court appeared to be moving in that direction when it stated that a § 1983 plaintiff must prove "that he was exposed to an unreasonable search or seizure in violation of the Fourth Amendment." <u>Price</u>, 256 F.3d at 370. However, this position is problematic for two reasons. First, it does not appear to represent the law of this circuit, which is that the elements of the common-law tort and constitutional tort are "coextensive." Second, regarding the facts of this case, we have found no precedent to support the proposition that an unreasonable *search* may serve as the foundation for a malicious prosecution claim under § 1983. (<u>Price</u> involved an arrest and detention, not an unlawful search.) Every circuit that has addressed the issue has held that a plaintiff must prove an unlawful seizure. In addition to the Second and Eleventh Circuit decisions cited in the text, <u>see</u>  <u>Britton v. Maloney</u>, 196 F.3d 24, 28 (1st Cir. 1999); <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217, 222 (3d Cir. 1998); <u>Reed v. City of Chicago</u>, 77 F.3d 1049, 1051 (7th Cir. 1996); and <u>Taylor v. Meacham</u>, 82 F.3d 1556, 1561 (10th Cir. 1996).  <u>Cf.</u> <u>Evans v. Ball</u>, 168 F.3d 856, 861 (5th Cir. 1999)(expansively defining "seizure" for the purposes of § 1983 malicious prosecution claims).

7

state where the offense was committed.  The confusion that arises is illustrated nicely by the post-<u>Albright</u> decision in <u>Taylor v. Gregg</u>, 36 F.3d 453 (5th Cir. 1994).  <u>Taylor</u> declared that a § 1983 plaintiff had to prove seven elements in order "[t]o prevail on a [Fourth Amendment] malicious prosecution claim *in Texas*," and those seven elements were taken directly from Texas common law.  <u>Taylor</u>, 36 F.3d at 455 (emphasis added)(citing <u>Brown v. United States</u>, 653 F.2d 196, 198-99 (5th Cir. 1981)).[3]  But in determining the meaning of one of those elements -- termination in favor of the accused -- the court looked not to Texas decisions but to decisions from the Second Circuit, the Fourth Circuit, and federal district courts from around the country.  <u>Taylor</u>, 36 F.3d at 455-56.  <u>Taylor</u> suggests that the elements of a federal constitutional claim are determined by state common law but that the scope and meaning of those common-law-derived elements are determined without regard to state decisions.  <u>See</u> <u>also</u> <u>Brummett v. Camble</u>, 946 F.2d 1178, 1183-84 (5th Cir. 1991).[4]

---

[3]     <u>Brown</u> was a Federal Tort Claims Act case in which the plaintiff alleged that he was subject to malicious prosecution after an FBI agent gave false testimony to a grand jury.  The FTCA provides that the United States may be held liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  Consequently, the court had to interpret and apply the tort law of the state of Texas because all the alleged wrongful acts occurred there.  <u>Brown</u>, 653 F.2d at 198.  Because the "constitutional tort" of malicious prosecution is rooted in the Fourth Amendment, the proper role of state tort law is much less clear.

[4]     Other panels of this circuit, however, have given some weight to state court decisions interpreting the elements of malicious prosecution.  <u>See</u>, <u>e.g.</u>, <u>Izen v. Catalina</u>, 256 F.3d 324, 328 (5th Cir. 2001) (<u>Bivens</u> action) (relying in part on Texas decisions as to when a prosecution terminates in favor of the accused).

Given this circuit's precedent, the plaintiff in this case had to prove the six elements of malicious prosecution under Louisiana tort law: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages. Piazza v. Mayne, 217 F.3d 239, 245 (5th Cir. 2000); Miller v. East Baton Rouge Parish Sheriff's Dep't, 511 So.2d 446, 452 (La. 1987). Parenthetically, if these events had taken place in Texas instead of Louisiana, the plaintiff also would have had to prove that he was actually innocent of the charges. See Taylor, 36 F.3d at 455. If malicious prosecution is in some sense a federal constitutional tort, the outcome of the case should not hinge on how a state defines and shapes the elements of a tort claim. See also Frantz v. Village of Bradford, 245 F.3d 869, 874-75 (6th Cir. 2001)("We hold that establishing a § 1983 cause of action requires a constitutional violation and cannot differ depending on the tort law of a particular state.").

The facts of this case present a novel problem arising from our willy-nilly incorporation of state tort law into constitutional litigation. In Louisiana malicious prosecution actions, the state courts have held that if criminal charges are dismissed prior to trial, a presumption arises that there was no

9

probable cause for the proceedings, and the burden shifts to the defendant to prove the presence of probable cause and the absence of malice.   See Williams v. DiVittoria, 777 F.Supp. 1332, 1338 (E.D. La. 1991)(applying Louisiana tort law).[5]   This burden-shifting approach cannot be warranted in § 1983 claims, but neither party addressed the issue and it does not dictate the outcome of this appeal.

To sum up thus far: The plaintiff in this case had to prove all the elements of malicious prosecution under Louisiana tort law.  Nevertheless, a Fourth Amendment malicious prosecution claim is essentially a federal constitutional claim, and federal courts are bound neither by the state courts' interpretation of those elements nor (we think) by procedural requirements like the burden-shifting framework imposed by Louisiana courts.

The crux of this case is whether there was probable cause for the criminal proceedings against Gordy.   With respect to probable cause, this court has held that

> For purposes of malicious prosecution, probable cause means "the existence of such facts and circumstances as

---

[5]     Only a handful of states follow Louisiana's approach.  See H. D. Warren, Annotation, Acquittal, Discharge, or Discontinuance or Criminal Charge as Evidence of Want of Probable Cause in Malicious Prosecution Action, 59 A.L.R.2d 1413 at § 4(1958 & Supp.)("The weight of authority supports the rule that . . . discontinuance at the instance of the prosecuting attorney . . . and other similar terminations of prosecutions whereon actions of malicious prosecution have been based, constitute no evidence of want of probable cause, raise no presumption thereof, and establish no prima facie case of want of probable cause.").  See also Wheeler v. Nesbitt, 65 U.S. (24 How.) 544, 551 (1860)(applying the traditional common-law rule that "the *onus probandi* . . . is upon the plaintiff to prove affirmatively . . . that the defendant had no reasonable ground for commencing the prosecution").

10

would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted."

Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999)(citation omitted); see also Wheeler v. Nesbitt, 65 U.S. (24 How.) 544, 551-52 (1860)(applying the identical common-law definition). Wheeler makes clear that "prosecutor" is not used narrowly in the modern sense of "prosecuting attorney" but in the sense of any person (or, in a § 1983 action, any state actor) who initiates or procures a criminal proceeding. Id. Consequently, an officer may be liable for malicious prosecution if his "malice results in an improperly motivated prosecution without probable cause" and even if the officer had no direct influence over the prosecuting attorney. Hand v. Gary, 838 F.2d 1420, 1426 (5th Cir. 1988); see also Wheeler v. Cosden Oil & Chem. Co., 734 F.2d 254, 260 (5th Cir. 1984), modified, 744 F.2d 1131 (5th Cir. 1984).[6] In the typical case, an officer maliciously causes a criminal proceeding to be brought by providing false or misleading information to a prosecuting attorney or grand jury. See, e.g., Sanders v. English, 950 F.2d 1152, 1163 (5th Cir. 1992). Nevertheless, the obtaining of an indictment will not insulate state actors from a malicious prosecution claim if a grand jury's decision has been "tainted by the malicious actions of

---

[6] Hand and Wheeler assumed that the "constitutional tort" of malicious prosecution was rooted in Fourteenth Amendment principles of substantive due process -- a position rejected by the Supreme Court in Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807 (1994). Nevertheless, these decisions are still good law to the limited extent to which we rely upon them.

11

the government officials." Hand, 838 F.2d at 1426. Another way of stating the probable cause inquiry for purposes of malicious prosecution, then, is to ask whether a reasonable officer -- at the time when criminal proceedings were instituted and based solely on the facts as the officers honestly and reasonably believed them to be -- would believe to a "fair probability" that a crime had been committed. Piazza, 217 F.3d at 246 (citations omitted).

B

We now apply these principles to the facts of this case. As noted above, the magistrate judge concluded that the defendants had no probable cause to believe that an offense had been committed, that the officers misstated or omitted facts in their police report provided to the district attorney, that they did so maliciously, and that the officers' actions were a legal cause of Gordy's prosecution on drug charges. The existence of probable cause is a mixed question of law and fact: Although factual findings are reviewed for clear error, we review the legal conclusion reached by the district court de novo. Cf. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663 (1996)("[A]s a general matter determinations of . . . probable cause should be reviewed de novo on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error. . . .").

The magistrate judge's determination that the officers lacked probable cause is based entirely on technical deficiencies

12

in the search warrant issued by the Jefferson Parish district judge. Although the officer's affidavit requested that a search warrant be issued "subsequent to this [controlled] delivery," the warrant itself -- which was issued just two hours after the officer received the tip from the DEA agent in California -- authorized the officers to search the apartment "forthwith". The magistrate judge ruled that, first, the search warrant went "beyond the scope justified by probable cause because there was no justification for searching 'forthwith,'"; and, second, the defect in the search warrant could not be cured by the affidavit or by the fact that the officers did not execute the search warrant until after the package was delivered.

We need not address the substance of the magistrate judge's analysis. The validity of the search warrant is irrelevant to whether an officer reasonably could have believed that Gordy had committed the crime of possessing marijuana with intent to distribute. The most obvious reason is that probable cause to institute criminal proceedings must be determined as of the time that charges were filed.[7] The magistrate judge erred by focusing on probable cause to search the apartment, even though she had already dismissed Gordy's § 1983 claim for an unreasonable search in violation of the Fourth Amendment.

---

[7] It is undisputed that the officers' involvement with this case ended when charges were filed.

The correct question, then, is whether the officers, at the time Gordy was charged, had probable cause to believe that he was guilty of possessing marijuana with intent to distribute. We focus on what the officers reasonably and honestly believed: First, the package sitting on the floor of the apartment contained a significant amount of marijuana. Second, the package was addressed to the apartment where Gordy lived with his mother. Third, although the addressee was "C. Charles," Lieutenant Davis testified that he had worked on at least ten cases where drug traffickers had used false names on packages. Fourth, Gordy accepted the package and placed it inside the apartment. Fifth, he signed for the package using his nickname, "Chuck," a variation of "Charles." And, sixth, as the police were approaching the apartment, Gordy (for whatever reason) walked outside the apartment but quickly went back inside and locked the door. These basic facts are beyond dispute and are sufficient to establish probable cause to believe that Gordy had committed a criminal offense.

To be sure, there was evidence suggesting that Gordy may not have been guilty of the offense. Gordy insisted that the package was misaddressed and that he did not know what was in the box. There was also the undisputed fact that Gordy had not opened the box when the officers entered his apartment. Nor did the police find any evidence of drug use or trafficking during their search of the apartment. However, the probable cause inquiry does not require a showing that the officer's belief was correct or that

14

it was more likely true than false; rather, "the probable cause analysis only requires that we find a basis for an officer to believe to a 'fair probability' that a violation occurred." Piazza, 217 F.3d at 246.  In light of the undisputed facts set forth above, it is clear that the officers in this case satisfied the probable cause standard and were therefore entitled to judgment as a matter of law.

As there was probable cause to charge Gordy with possession of marijuana, we need not reach the related issues whether the officers caused Gordy's prosecution by omitting relevant information from the police report, whether they acted out of malice, or whether they were entitled to qualified immunity.

## III. CONCLUSION

For the foregoing reasons, the judgment of the magistrate judge is REVERSED, and the case is REMANDED for entry of judgment in favor of the defendants.

**REVERSED and REMANDED.**