# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 14, 2023

Lyle W. Cayce
Clerk

———————

No. 22-20342

———————

Floyd Wallace,

*Plaintiff—Appellee*,

*versus*

Heather Taylor, *in her individual and official capacities*; James Hartley, *in his individual and official capacities*; Tyson Hamilton, *in his individual and official capacities*,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-292

———————————————————————

Before Richman, *Chief Judge*, and Haynes and Graves, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:[*]

Defendants Heather Taylor, James Hartley, and Tyson Hamilton appeal the district court's denial of their motion to dismiss seeking qualified immunity from Plaintiff's claims. They are each entitled to qualified immunity, so we REVERSE and RENDER.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20342

# I. Background

## a. Factual Background

Plaintiff Floyd Wallace alleges the following facts in his first amended complaint. On February 21, 2021, Wallace was walking around the parking lot of the Tomball Police Department ("TPD") while recording on his body camera[1] and cell phone. As he was walking away, TPD officer Taylor pulled up in her police SUV with the emergency lights activated. She told Wallace, "Hey man, get over here. Come here" and asked, "What are you doing over here? What are you doing behind the police tower?" Taylor continues to ask Wallace what he was doing behind the police tower in the parking lot when TPD officer Hamilton approaches. A moment later, Wallace heard a police siren and saw another police SUV approaching him. He said "I don't have time for this sh--. I'm out," and he walked away from Taylor and Hamilton. The vehicle pulled over in front of him, and TPD officer Lopez got out and approached Wallace. Wallace asked why he was being detained, and Lopez responded that he heard he had run from one of the other officers. Taylor told Lopez that Wallace was "creeping around behind the police tower crouching down right by it and as soon as he saw me, he f---ing bolted." Lopez asked Wallace what he was doing in the parking lot and if he was damaging their property. He then handcuffed Wallace and told him he was being detained for an investigation of potential criminal mischief.

Lopez, Taylor, and Hamilton repeatedly demanded that Wallace provide them with his ID card. Wallace refused, claiming he did not have to provide any identifying information unless he was under arrest. The officers patted Wallace down and placed him on the ground where they directed him

---

[1] Wallace recorded most of the encounter on his own body camera and included the footage as Exhibit 1 to his first amended complaint.

to sit. Two other TPD officers then arrived at the scene, including Hartley. After speaking with someone on the phone, Taylor directed Hartley and Hamilton to stand Wallace up and search him for his wallet so they could identify him. Wallace repeatedly protested that he did not consent to searches. Hartley and Hamilton searched Wallace, but they did not find a wallet on him. Lopez returned and told Wallace that Taylor checked out the police tower and observed that one of its tires looked as if it was not properly inflated. Lopez also told Wallace that Taylor was speaking with the District Attorney so they could bring criminal charges against him. In hopes of avoiding arrest, Wallace verbally provided his name, birthday, and address. The officers picked Wallace up from the ground, and Taylor told him he was under arrest for evading a police officer and failing to identify himself. Wallace was held temporarily at the police station and later transferred to the Harris County jail.

The District Attorney brought only one charge against Wallace: evading arrest from Lopez. At a probable cause hearing, the magistrate determined there was not sufficient probable cause to support the charge, and Wallace was immediately released.

## b. Procedural Background

On January 28, 2022, Wallace filed his original *pro se* complaint against the City of Tomball and officers Taylor, Hartley, Hamilton, and Lopez. After the City, Taylor, Hartley, and Hamilton moved to dismiss the claims against them, Wallace filed his first amended complaint. Wallace attached four exhibits: his body camera footage, an affidavit from another citizen who filmed the incident, the criminal complaint against him, and a recording of his probable cause hearing. He alleged five counts: 1) A Fourth Amendment unreasonable seizure claim against Taylor and Lopez; 2) A Fourth Amendment unreasonable search claim against Hamilton and Hartley; 3) A

No. 22-20342

First Amendment claim against Lopez; 4) A Fourteenth Amendment malicious prosecution claim against Taylor and Lopez; and 5) A *Monell* claim against the City of Tomball for failure to train.

The City, Taylor, Hartley, and Hamilton again moved to dismiss Wallace's claims against them. The individual Defendants asserted qualified immunity. Lopez did not join the motion to dismiss filed by the other individual Defendants, so he is not a party to this appeal. The district court granted the City's motion to dismiss. But it denied qualified immunity to the individual Defendants in a terse order, stating in relevant part:

> The Court is of the opinion that the defendants' defense of qualified immunity is premature. Moreover, the facts presented, in their totality, do not support dismissal of this suit.
>
> . . .
>
> In the case at bar, the plaintiff's pleadings proffer the claim that he was wrongfully arrested and detained based on suspicions that the officers determined were unfounded and, yet, they engaged in a malicious prosecution when the basis for the plaintiff's arrest/detention did not 'pan-out'. Moreover, the plaintiff asserts, the judge dismissed the charges that the officers' asserted.
>
> In the Court's opinion, it may be argued that the officers had a proper basis to question and/or temporarily detain the plaintiff until their suspicions were determined to be unfounded. However, qualified immunity does not shield officers from insisting on being 'right' and placing charges against a citizen when their suspicions are proved unfounded.

Taylor, Hartley, and Hamilton (hereinafter "Defendants") timely filed a notice of appeal.

No. 22-20342

## II. Jurisdiction & Standard of Review

We have jurisdiction to review a denial of a motion to dismiss seeking qualified immunity "only to the extent that the appeal concerns the purely legal question [of] whether the defendants are entitled to qualified immunity on the facts[.]" *Armstrong v. Ashley*, 918 F.3d 419, 422 (5th Cir. 2019) (citation omitted).

We review the district court's denial of the qualified immunity defense de novo, accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). Where video recordings are included in the pleadings, the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint only if the video "blatantly contradict[s]" those allegations.[2] *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1163 (5th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## III. Discussion

Defendants have asserted the defense of qualified immunity. Qualified immunity provides government officials with immunity from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). We apply a two-part test: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the violation. *Cooper v. Brown*, 844 F.3d

---

[2] We confine our analysis to Defendants' conduct as alleged in Wallace's first amended complaint since his allegations are not blatantly contradicted by the video recordings.

517, 522 (5th Cir. 2016) (citation omitted). Both questions are matters of law. *Id.*

A preliminary point before we begin our discussion. Ordinarily, each individual defendant's entitlement to qualified immunity should be analyzed separately. *Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015). When the district court has not engaged in the proper individualized analysis, we can either remand or conduct the analysis ourselves. *Compare Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 478–79 (5th Cir. 2014) ("the district court must also 'examine[ ] the actions of defendants individually in the qualified immunity context' . . . The district court has not yet addressed this issue[] and must do so on remand") (citation omitted), *with Ramirez v. Guadarrama*, 3 F.4th 129, 137 n.4 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2571 (2022) ("We agree with Jefferson that the district court failed to engage in an individualized analysis, and that its collective treatment of the defendant officers' actions was error. This point is, however, inconsequential, as we find that both officers are entitled to qualified immunity."). Here, we exercise our discretion to conduct the QI analysis ourselves.

### a. Unreasonable Seizure

Wallace alleges that Taylor violated his Fourth Amendment rights by seizing him without probable cause. Wallace makes this claim with respect to his investigative detention and ultimate arrest.

For his investigative detention, "police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." *Carroll*, 800 F.3d at 171 (internal quotation marks and citation omitted). Reasonable suspicion requires "the police officer . . . to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009)

(quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). According to Wallace's complaint, Taylor saw Wallace crouched down by the police tower in the parking lot. In his response to Defendants' motion to dismiss, Wallace explained that "after looking at the police tower, a portable surveillance tower, in the parking lot[, he] ran a short distance across the parking lot and then began to walk to other areas of the Police Station." Taylor and Lopez repeatedly asked Wallace what he was doing behind the police tower in the parking lot and if he had damaged TPD property. They placed Wallace under investigative detention for criminal mischief, and Taylor checked to see if the tower had been tampered with.

Wallace admits that he was standing near the police tower in the TPD parking lot and then ran a short distance away. This activity alone was sufficient for Taylor to have a reasonable suspicion that Wallace was tampering with the police tower, so she had authority to detain Wallace, ask him what he was doing, and investigate whether the police tower had been tampered with. Since this is what Wallace alleges she did, at a minimum, it was not clearly established that Taylor was committing a constitutional violation during Wallace's initial detention.

For Wallace's arrest, Taylor is entitled to qualified immunity unless there was no actual probable cause for the arrest and Taylor's decision to arrest was objectively unreasonable in light of clearly established law. *Crostley v. Lamar Cty.*, 717 F.3d 410, 422–23 (5th Cir. 2013). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "If an officer reasonably but mistakenly believes that

probable cause exists, [she] is entitled to qualified immunity." *Carroll*, 800 F.3d at 172 (internal quotation marks and citation omitted).

Wallace argued before the district court that there was no probable cause to arrest him for evading arrest because the officers did not attempt to lawfully arrest or detain him. Tex. Penal Code § 38.04 ("A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."). Wallace was only charged with evading arrest from Lopez. However, when considering wrongful arrest claims, we "apply an objective standard, which means that we will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). Even if there was no probable cause to arrest Wallace for evading arrest from Lopez, Wallace must also show there was no probable cause to arrest him for evading arrest from Taylor.

As discussed above, Taylor had reasonable suspicion to lawfully detain Wallace for an investigation. *Cf. Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) ("if the detention was not lawful, then even if [plaintiff] fled, [the officers] would not have had probable cause to believe that [plaintiff] was violating § 38.04(a)."). The next question is whether Taylor was *attempting* to arrest or detain Wallace. Wallace argues that Taylor was not attempting to arrest or detain him because she did not tell him he was being arrested or to stop when he started walking away. Defendants argue that Taylor had probable cause to arrest Wallace for evading arrest because a reasonable officer in Taylor's situation would have understood that Wallace committed the "offense by ignoring her command to 'come here' and walking away." In support, Defendants cite to Texas courts affirming convictions for evading arrest where defendants fled after being directed to

"come here." *Cash v. State*, No. 07-17-00173-CR, 2017 WL 6614270, at *1 (Tex. App.—Amarillo Dec. 19, 2017, no pet.) ("Such was enough for a rational fact-finder to conclude, beyond reasonable doubt, that it was appellant who departed after the trooper directed him to 'come here.'"); *Graves v. State*, No. 01-19-00868-CR, 2020 WL 7349101, at *6 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, pet. ref'd) ("Officer Luna ordered appellant to 'come here' or 'stop.' However, rather than comply, appellant ignored the officers' repeated commands to stop and began sprinting across the street away from the officers."); *see also Hervey v. State*, No. 10-17-00140-CR, 2017 WL 6614656, at *2 (Tex. App.—Waco Dec. 27, 2017, no pet.) ("The attempted detention occurred immediately upon the command of Detective Dunagan for Hervey to 'Come here, man!' upon exiting the unmarked vehicle.").

Again, Wallace alleged that Taylor pulled up in a police SUV with the emergency lights activated. Taylor directed Wallace repeatedly to "come here." Even without telling Wallace to stop or that he was under arrest, a reasonable officer could believe that activating emergency lights and commanding Wallace to "come here" are a sufficient show of authority to put him on notice that he or she intends to detain him. *Cf. United States v. Wright*, 57 F.4th 524, 532 (5th Cir. 2023) (When an officer quickly pulled up behind the defendant's parked vehicle "with emergency lights engaged, she was showing a sign of authority clearly communicating to [defendant] he was not free to leave."); *see also Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("A person commits a crime under Section 38.04 only if he knows a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority."). While Wallace was stopped by Lopez soon after he walked away from Taylor, "[e]ven a dispirited, brief attempt to walk away from an officer's command to stop has been held to be sufficient flight to constitute evading arrest or

detention." *Henderson v. State*, No. 12–09–00399–CR, 2011 WL 2162820, at *5 (Tex. App.—Tyler May 31, 2011, no pet.) (collecting cases). Based on the facts alleged in Wallace's first amended complaint, Taylor's decision to arrest Wallace was not objectively unreasonable in light of clearly established law. Accordingly, Taylor is entitled to qualified immunity from Wallace's unlawful detention and unlawful arrest claims against her.

### b. Unreasonable Search

Wallace also alleges that Hartley and Hamilton violated his Fourth Amendment rights by searching his person without his consent. The officers searched Wallace for his wallet after he refused to identify himself. When Hartley and Hamilton stood him up to search him, he repeatedly asked the officers to stop searching and proclaimed that he did not consent to searches. Defendants argue that Hartley and Hamilton's search was a valid search incident for a weapon, but Wallace alleges that the stated purpose of the search was to find his wallet so the officers could identify him. This court recently confronted a similar claim in *McCullough v. Wright*, 824 Fed. App'x. 281 (5th Cir. 2020).[3] There, the officers arrested the plaintiff for interference of public duties, and they searched her wallet for identification after she refused to identify herself. *Id.* at 287. In an unpublished opinion, we concluded that plaintiff had "failed to show that it is clearly established that a limited search for the sole purpose of procuring identification, after an uncooperative arrestee refuses numerous requests to identify herself, violates the Fourth Amendment." *Id.* However, the plaintiff in that case was already under arrest, so the officers performed a search incident to a lawful arrest. Here, Wallace alleges the officers searched him while he was under

---

[3] Although an unpublished opinion issued on or after January 1, 1996 is generally not precedential, it may be considered as persuasive authority. *Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006).

investigative detention and before he was arrested. The Texas Court of Criminal Appeals has explained the materiality of this distinction:

> Though an officer may ask a defendant to identify himself during a valid investigative detention, that does not automatically mean that the officer can search a defendant's person to obtain or confirm his identity. Consequently, the officer's conduct of reaching into appellant's pocket—even under a valid investigative detention—was an illegal search unless there existed some exception to the usual probable cause requirement.

*Baldwin v. State*, 278 S.W.3d 367, 372 (Tex. Crim. App. 2009) (citation omitted). Nevertheless, the Texas Court of Criminal Appeals has also held that "[i]t is irrelevant that the arrest occurs immediately before or after the search [incident], as long as sufficient probable cause exists for the officer to arrest before the search." *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999) (citation omitted); *see also Thornton v. Beto*, 470 F.2d 657, 659 (5th Cir. 1972) ("The fact that the search was commenced shortly before the arrest was made does not vitiate the search as incident to the arrest since there was probable cause to arrest without regard to the fruits of the search."). Even if the officers had not formally arrested Wallace yet, Wallace had already walked away from Taylor. Assuming that Wallace's detention had not already amounted to a formal arrest,[4] Wallace has failed to show it is clearly established that, in a situation where officers reasonably believe they have probable cause to arrest someone, a search to procure identification after the detainee refuses to identify himself violates the Fourth Amendment. *Cf. McCullough*, 824 Fed. App'x. at 287. Hartley and Hamilton are entitled

---

[4] *See Turner v. Lieutenant Driver*, 848 F.3d 678, 693 (5th Cir. 2017) (explaining when an investigative stop amounts to an arrest).

No. 22-20342

to qualified immunity from Wallace's Fourth Amendment claim against them.

### c. Malicious Prosecution

Lastly, Wallace alleges a malicious prosecution claim against Taylor for initiating the evading arrest charge against him. When Wallace filed his first amended complaint on March 16, 2022, this court did not recognize a freestanding federal claim for malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc) (holding that "'malicious prosecution' standing alone is no violation of the United States Constitution."). However, the Supreme Court later held that litigants may bring Fourth Amendment malicious prosecution claims under § 1983. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). Accordingly, we recently recognized that *Thompson* overruled *Castellano* and reinstated our prior six-element malicious prosecution claim from *Gordy*:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (citing *Gordy v. Burns*, 294 F.3d 722, 727 (5th Cir. 2002)). In addition to proving each of these elements, plaintiffs must also prove "the threshold element of an unlawful Fourth Amendment seizure." *Id.* "[I]f the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward." *Id.* at n.15. Therefore, Wallace must sufficiently allege each of these elements in order to bring a claim for malicious prosecution.

When there is a change in law during the pendency of an appeal, this court will generally remand to give the parties and the district court an opportunity to address the new standard. *See, e.g.*, *Luke v. CPlace Forest Park SNF, L.L.C.*, 608 F. App'x 246 (5th Cir. 2015) (remanding grant of summary judgment after the Supreme Court issued a decision abrogating relevant Fifth Circuit precedent). However, in order to overcome Taylor's assertion of qualified immunity, Wallace must ultimately show that his Fourth Amendment right to be free from malicious prosecution "was clearly established at the time of the alleged violation." *Cooper*, 844 F.3d at 522. This court did not recognize a federal malicious prosecution claim at the time Wallace was charged with evading arrest, and "[a] claim that we ha[d] expressly not recognized is the antithesis of a clearly established one." *Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094, 1096 (5th Cir. 2022); *Morgan v. Chapman*, 969 F.3d 238, 251 (5th Cir. 2020) ("Under this circuit's precedents, there is no constitutional right to be free from abuse of process or malicious prosecution."). While the Fourth Amendment right to be free from arrest absent probable cause has been clearly established for some time, there was no clearly established Fourth Amendment right to be free from malicious prosecution at the time of Wallace's arrest. Therefore, Taylor is entitled to qualified immunity from Wallace's malicious prosecution claim.

## IV. Conclusion

For the reasons stated above, we REVERSE the district court's denial of qualified immunity as to Taylor, Hartley, and Hamilton and RENDER judgment in their favor.