Donald A. TITTLE, Jr., Plaintiff,

v.

Mark RAINES and Steve Rooney, Defendants.

No. Civ.A.3:99–CV–0478–L.

United States District Court, N.D. Texas, Dallas Division.

Aug. 29, 2002.

**540**

Jack O. Norman, Law Office of Jack O. Norman, Dallas TX, Russell Daniels, Thomas J. McGeady, James M. Meredith, Logan & Lowry, L.L.P., Vinita, OK, for Plaintiff.

Paul K. Pearce, Jr., Matthews, Crlton, Stein, Shiels, Pearce, Dunn & Knott, L.L.P., Dallas, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court is Defendants Mark Raines and Steve Rooney's Motion for Summary Judgment, filed July 10, 2000. After carefully considering the motion, response, reply, appendices, and applicable law, the court **grants** Defendants Mark Raines and Steve Rooney's Motion for Summary Judgment.

### I. *Procedural and Factual Background*

Plaintiff Donald Tittle ("Tittle" or "Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 against Defendants Mark Raines ("Raines"), Steve Rooney ("Rooney"), James McLaughlin ("McLaughlin"), and the Town of Addison, Texas ("the Town")(collectively referred to as "Defen-

dants") on March 5, 1999, and filed Plaintiff's First Amended Complaint ("Complaint") on July 13, 1999. The court, based on Plaintiff's stipulation of dismissal, dismissed Tittle's claims against the Town and McLaughlin on July 17, 2000. By way of his Complaint, Tittle contends that Rooney and Raines arrested him on October 16, 1996, without probable cause, maliciously prosecuted him, conspired to deprive him of his constitutional right to be free from unlawful arrest and malicious prosecution and therefore deprived him of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution. Tittle also sues Raines and Rooney for malicious prosecution under Texas state law.

Raines and Rooney contend that they are entitled to qualified immunity regarding Tittle's claims of false arrest, malicious prosecution and conspiracy because they did not violate clearly established laws of which a reasonable person would have known. Raines and Rooney also contend that probable cause existed for Tittle's arrest and prosecution and that Tittle's conspiracy claim therefore fails as a matter of law. Finally, Raines and Rooney contend that Tittle's false arrest, conspiracy, and state law malicious prosecution claims are barred by limitations.

Defendants Raines and Rooney move for summary judgment on all of Plaintiff Tittle's claims, contending that no genuine issue of material fact exists regarding any of his claims. For this reason, Raines and Rooney contend they are entitled to judgment as a matter of law. Plaintiff Tittle, on the other hand, contends that summary judgment should be denied because genuine issues of material fact exist regarding all of his claims.

As expected, there are disputed facts in this case; however, many key facts are not in dispute. When the facts are in dispute, they are presented and viewed in the light

most favorable to Tittle as the nonmovant. The court, however, does not consider a fact to be in dispute merely by a conclusory or speculative statement or assertion that it is disputed. Competent summary judgment evidence must show that a fact is in dispute. Finally, the court only cites and relies on those facts which are relevant and material to decide the pending summary judgment motion. The court now sets forth the facts it relies on to decide Defendants Raines and Rooney's Motion for Summary Judgment.

Tittle is an attorney and has been licensed to practice law in the state of Texas since 1989. On October 12, 1996, Michele Hiss retained Tittle to provide legal advice to her regarding a hit-and-run accident in which she had been involved earlier that day in Addison, Texas. At approximately 2:30 a.m., Ms. Hiss, driving while intoxicated, struck three pedestrians with her automobile. She killed one pedestrian and seriously injured the other two. As a result of striking the pedestrians,. Ms. Hiss's vehicle was damaged and covered with blood. She left the scene and drove the vehicle to the home of her brother, Steve Hiss, and parked it in her brother's driveway or in front of the house. Later that day, Ms. Hiss and Steve Hiss met with Tittle to obtain legal advice from him, and Tittle discussed the case with them. Tittle was aware that the Addison Police Department ("APD") was conducting an investigation into the hit-and-run accident.[1]

One matter that was discussed over the course of the day between Tittle and his client was whether the vehicle could be moved. Tittle informed Ms. Hiss and her brother that he was uncertain about the answer to their inquiry and that he would conduct some research on the issue. Tittle consulted three different lawyers regarding this issue: Joe Shearin, a criminal defense attorney; Michael Brown, an attorney who attended law school with Tittle at the University of Texas from 1986 to 1989;. and James Rolfe, a former United States Attorney for the Northern District of Texas.

Tittle initially contacted Joe Shearin over the weekend of October 12, 1996 regarding the hit-and-run accident, and informed him of "a few of the details." On October 14, 1996, Tittle went to Mr. Shearin's office and discussed several issues regarding the accident. Tittle and Mr. Shearin readily concluded that the vehicle could not be "changed, altered, destroyed, repaired, or attempted to be cleaned up," but had to remain "as is" because it would be used as evidence.

Tittle contacted Michael Brown Saturday morning on October 12, 1996. Mr. Brown and Tittle agreed that if the vehicle in question was of any evidentiary value, it should not be repaired or altered and that the vehicle's existing condition should be preserved.

Tittle called Mr. Rolfe on Tuesday morning, October 15, 1996. Tittle gave some details about the hit-and-run accident involving his client and informed Mr. Rolfe that the vehicle was stored at his

---

1. According to Pamela Hallisey, Steve Hiss's girlfriend, the car was parked in front of the house on October 12, 1996, and later that day, the car was moved to the garage on the advice of Hiss's attorney. Whether Tittle denies this statement is immaterial because at the time Rooney sought the arrest warrant, he was aware of this information, and it certainly is relevant to the issue of probable cause. The car had damage to its windshield, front end, roof and trunk area. There was blood on the left side of the front windshield and down the back windshield. Another witness, Thomas Reynolds, verifies Ms. Hallisey's description of the damage to the vehicle. He also states specifically that the front windshield wipers were mangled and that the windshield itself was "completely smashed" and barely attached to the car.

client's brother's house, but that his client wanted the car moved. Mr. Rolfe informed Tittle that he believed that the vehicle could be moved as long as the evidence was preserved and its integrity was maintained. Tittle told his clients sometime on October 15, 1996, that it was acceptable to move the vehicle as long as the evidence was preserved and its integrity was maintained.

On October 15, 1996, Ms. Hiss rented a U–Haul truck and flatbed trailer, and a storage unit at the "U–Stor" in Carrollton, Texas. Later on the same day, while the vehicle was in the garage, Tittle met with Judge Vickers Cunningham of Dallas County Criminal Court No. 8 to solicit advice about how to arrange a plea agreement for his client before revealing her identity. According to Judge Cunningham, Tittle told him that the "police were not close to solving this case" and "may in fact not be able to solve the case without his client coming forward and making an admission." Tittle denies making these statements, and to the extent they are relevant, the court must accept Tittle's account. Tittle's focus during his conversation with Judge Cunningham was how he (Tittle) might be able to secure probation for his client prior to making her identity known.

On Tuesday, October 15, 1996, the APD received information from a Thomas Reynolds that the vehicle was in Steve Hiss's garage at 3817 Portsmouth in Plano, Texas. Addison police officers set up surveillance of the residence, while additional investigators began the process of obtaining a search warrant for the vehicle and the garage area of the residence. While the search warrant was being obtained from and signed by a judge, Addison police officers observed a U–Haul truck with a vehicle loaded on a trailer in the alley behind Steve Hiss's residence. Rooney observed Steve Hiss and his father Roger Hiss carrying flashlights and securing the trailer and vehicle for transport. Rooney approached the suspect vehicle and observed Steve Hiss and Roger Hiss placing a tarp over it. At that time, the men only covered the front portion of the vehicle. Rooney was able to verify that the rear license plate number matched the suspect license plate number of the car involved in the hit-and-run accident on October 12, 1996. He also observed that the vehicle was damaged and had blood on the exterior. As Rooney made contact with Steve and Roger Hiss, Michele Hiss left the residence carrying her purse and stated that she was "ready."

While the police officers were at his residence, Steve Hiss called Tittle. Tittle obtained directions to Steve Hiss's house and arrived sometime after 7:00 p.m. Rooney went into the Hiss residence and had a discussion with Tittle regarding the movement of the vehicle in question. Tittle informed Rooney that he (Tittle) believed it was permissible to move the vehicle as long as the evidence was preserved and its integrity was maintained. The vehicle subsequently was seized as evidence.

On October 16, 1996, Rooney either prepared an Affidavit for Arrest Warrant, or had one prepared.[2] The affidavit was

2. The Affidavit for Arrest Warrant set forth the following facts:
 On 10–12–96 officers were investigating a fatality hit and run accident involving three pedestrians. On 10–15–96, investigators received information the suspect vehicle was concealed in Steve Hiss garage located at 3817 Portsmouth Circle, Plano, Collin County, Texas. Officers established surveillance on the residence while additional investigators prepared a search warrant. While the warrant was being reviewed and signed, Officers Snyder and Hobbs observed a U–Haul truck vehicle hauler in the alley behind Hess's [sic] residence. Officers observed a vehicle being removed from the garage and placed on the vehicle hauler. Investigator Rooney approached the

based on Rooney's personal observation and information he obtained during the course of his investigation. As will be discussed later, Tittle specifically states that he never told Rooney that Steve and Roger Hiss had "concealed" the vehicle or that the vehicle was moved at "counsel's direction." The affidavit was presented to the Honorable Curtis Henderson of the 219th Judicial District Court of Collin County, Texas. After review of the Affidavit for Arrest Warrant, Judge Henderson determined that probable cause existed for the issuance of an arrest warrant for Tittle for the felony offense of Tampering with Physical Evidence, in violation of Tex. Penal Code, § 37.09(a)(1), and issued such a warrant. Tittle was arrested on the evening of October 16, 1996, at the Addison Police Department.

Subsequent to Tittle's arrest, his counsel and Rolfe met with Raines and Alvin Berry, Addison's legal adviser, to discuss whether there was probable cause to establish that Tittle had violated the state tampering statute. At the meeting, Addison officials were informed of Tittle's discussion with several lawyers, his advice to the Hiss family regarding evidentiary preservation and integrity, the photographs of the vehicle taken by an investigator hired by Tittle, the discussion between Tittle and Judge Cunningham, and Tittle's passing of a polygraph. Neither this information nor any evidence presented at the meeting caused Raines or Rooney to believe that the charge against Tittle was not supported by probable cause. On the advice of Berry, Addison police officials proceeded with the filing of the case with the Collin County District Attorney's Office. On March 6, 1997, the grand jury no-billed Tittle.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v.*

subjects who were loading the vehicle and they were identified as Hiss, Steve and his father Hess [sic], Roger. The suspect vehicle [w]as secured and the search warrant was executed. The Defendant Tittle, Don arrived at the residence and stated he was an attorney and would be representing any-

one at the residence accused. While talking to Investigator Rooney, Don Tittle stated that both Steve and Roger Hess [sic] had concealed the vehicle and attempted to move the vehicle to another location at counsels [sic] direction, stating these facts could be verified.

*Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### III. *Analysis*

#### A. Qualified Immunity

#### 1. The Applicable Standard

Defendants Raines and Rooney contend that they are shielded from suit and liability under the doctrine of qualified immunity. Plaintiff Tittle contends that Raines and Rooney are not entitled to qualified immunity because he has brought forth credible evidence that Raines and Rooney materially misrepresented facts in the probable cause affidavit (PCA) and omitted other facts indicative of his (Tittle's) innocence, and that no reasonable police officer could conclude based upon the facts presented to Raines and Rooney that there was probable cause to justify his arrest or prosecution for a violation of the state tampering statute.

■■■ Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Defendants Raines and Rooney have pleaded this defense.

■■■ In deciding a motion for summary judgment that raises the defense of qualified immunity, the court must *first* decide "whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (citing *Siegert v. Gilley,* 500 U.S. 226, 232–33, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)); *see also Kerr v. Lyford,* 171 F.3d 330, 339 (5th Cir.1999). The second prong of the test requires the court to make two separate inquiries: whether the right allegedly violated was clearly established at the time of the event giving rise to the plaintiff's claim, and if so, whether the conduct of the defendant was objectively unreasonable. *Evans v. Ball,* 168 F.3d 856, 860 (5th Cir. 1999). Although many cases continue to state that the determination of the qualified immunity issue requires the application of a bifurcated test, the analytical

framework for resolving issues of qualified immunity necessarily requires, or may require, a *three-step* analysis. *See Kerr v. Lyford,* 171 F.3d at 339; *Evans v. Ball,* 168 F.3d at 860; *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir.1998); *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1305 (5th Cir.1995), *cert. denied,* 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996).

█ Whether a defendant acted within the scope of his authority performing a discretionary function and whether a reasonable official in his position would have deemed his conduct unconstitutional are not to be considered by the court unless each part of the three-step inquiry has been answered affirmatively on behalf of the plaintiff. *Kerr v. Lyford,* 171 F.3d at 339. In other words, only after a plaintiff demonstrates the existence and violation of a clearly established constitutional or statutory right is the defendant required to show that he was performing a discretionary function and that a reasonable official would not have considered his actions to be unconstitutional at the time of the incident in question. *Id.* at 338.

█ A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir.1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. 3034; *Stefanoff v. Hays County,* 154 F.3d 523, 525 (5th Cir.1998); and *Pierce v. Smith,* 117 F.3d 866, 871 (5th Cir.1997).

█ In *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. 3034, the Supreme Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether an action is legal], immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Gibson v. Rich,* 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. at 341, 106 S.Ct. 1092. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster v. City of Lake Jackson,* 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. 3034. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith,* 117 F.3d at 882; *Stefanoff v. Hays County,* 154 F.3d at 525.

### 2. Qualified Immunity and False Arrest

Tittle was arrested pursuant to a warrant that was issued based upon informa-

tion provided by Rooney for a PCA. The arrest was made on an alleged violation of § 37.09 of the Texas Penal Code.[3] Tittle contends that Rooney used false and misleading information and omitted key facts in the PCA to secure the arrest warrant for him. He further contends that the only portion of the PCA which purports to establish probable cause for his arrest is the last sentence, and that the sentence only states a conclusion devoid of fact. The last sentence states, "[w]hile talking to investigator Rooney, Don Tittle stated that both Steve and Roger Hess [sic] had concealed the vehicle and attempted to move the vehicle to another location at counsels [sic] direction." Plaintiff's evidence establishes that the words "conceal" and "at counsels [sic] direction" were never uttered by him, and for purposes of summary judgment, the court must accept Plaintiff's version of the facts as long as it is supported by competent summary judgment evidence. In the instant case, according to Tittle, removing the false statements inserted by Rooney in the PCA— here the use of the words "conceal" and "at counsels [sic] direction"—the PCA is wholly devoid of probable cause. Finally, Tittle contends that not only did Rooney misrepresent the facts, he omitted that the Hiss family had rented a storage facility nearby, omitted Tittle's statement to Rooney the night before that he (Tittle) had merely rendered legal advice to the Hiss family in response to their questions and omitted the advice that Tittle actually gave

to the Hiss family regarding evidentiary preservation and integrity.

With respect to Raines, Tittle contends that because Raines discussed and reviewed the arrest warrant with Rooney, and he (Tittle) gave Raines the same information he had related to Rooney the night before to his arrest, Raines also omitted key facts relevant to the probable cause inquiry and joined with Rooney in presenting a materially misleading affidavit.

The court accepts as true the facts as presented by Tittle. The court, however, does not agree, as will be discussed later, with Tittle's interpretation and application of certain facts.

 Undertaking the required three-step analysis for resolving the issue of qualified immunity, the court first determines that Tittle has alleged a constitutional violation for unlawful arrest that can be brought under section 1983. *See Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d at 1303; *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir.1992); and *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir.1988). Second, this right was clearly established at the time of Tittle's alleged unlawful arrest in 1996. *Id.* The court, however, concludes that Tittle failed to show that Rooney and Raines's conduct was objectively unreasonable concerning his arrest or prosecution.[4]

The question that must be answered regarding the reasonableness of Raines and Rooney's conduct is whether a reasonable police officer *could have believed* that

---

**3.** This statute, which pertains to tampering with or fabricating physical evidence, provided at the time of Tittle's arrest in relevant part as follows:

> (a) a person commits an offense if, knowing that an investigation or official proceeding is pending or in progress, he:
> > (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability

as evidence in the investigation or official proceeding....

Tex. Pen.Code Ann. § 37.09(a)(1) (Vernon 1994).

**4.** "The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).

their conduct was lawful in light of clearly established law and the information they possessed at the time they acted regarding the arrest and prosecution of Tittle. *See Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. 3034. Stated another way, Tittle must establish, or raise a genuine issue of material fact, that no police officer of reasonable competence *could* agree on the reasonableness of the actions taken by Raines and Rooney regarding his arrest and prosecution. *See Malley v. Briggs,* 475 U.S. at 341, 106 S.Ct. 1092. The court determines that a reasonably competent police officer could have believed that probable cause existed to seek a warrant for Tittle's arrest for a violation of Texas Penal Code, § 37.09(a)(1), and to prosecute him for the offense; and this issue is the focus of the court's analysis relative to Tittle's false arrest and malicious prosecution claims.

 The court begins its analysis by setting forth the meaning of probable cause in the context of an arrest. Probable cause means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [one] has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (citations omitted). When determining whether a reasonable person would have believed that an offense occurred, a court considers the expertise and experience of law enforcement officials. *See United States v. Garcia,* 179 F.3d 265, 268 (5th Cir.1999), *cert. denied,* 530 U.S. 1222, 120 S.Ct. 2235, 147 L.Ed.2d 264 (2000) (citing *United States v. Ortiz,* 422 U.S. 891, 897, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975)). "Probable cause 'does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false." *Piazza v. Mayne,* 217 F.3d 239, 245–46 (5th Cir.2000)

(quoting *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). In determining whether probable cause exists, a court is required only to find a basis for an officer to believe to a "fair probability" that an offense occurred. *Id.* (citing *United States v. Antone,* 753 F.2d 1301, 1304 (5th Cir.1985)) (citations omitted). A "fair probability" does not mean that a reasonable person would have believed it more likely than not, which is a preponderance of the evidence standard, that an offense occurred. *Garcia,* 179 F.3d at 269; *Antone,* 753 F.2d at 1304. It simply means "something more than a bare suspicion, but need not reach the fifty percent mark." *Garcia,* 179 F.3d at 269; *see also United States v. Watson,* 273 F.3d 599, 602 (5th Cir.2001).

The court now summarizes the evidence of which Rooney knew at the time he sought an arrest warrant for Tittle on October 16, 1996:

Tittle knew that his client was involved in a hit-and-run accident on October 12, 2996, and that the APD was conducting an investigation into the accident. Tittle knew that the vehicle was a critical piece of evidence relating to the investigation. Officers of the APD had received information that the vehicle involved in the hit-and-run accident was in Steve Hiss's garage at 3817 Portsmouth, Plano, Texas. A witness informed the Addison police that the damaged and bloody vehicle had been previously moved from the street in front of Hiss's house into his garage and that this was done on the advice of Hiss's attorney. Officers set up surveillance of the residence on October 15, 1996, and Rooney and other police officers observed Steve Hiss and his father load the vehicle onto a trailer, place a tarp over it, and get ready to leave the residence at night with the tarp-covered vehicle and take it to another location. Rooney saw that the

license number matched that of the vehicle involved in the hit-and-run accident. Michele Hiss stated that she was "ready" to leave. Tittle arrived at Steve Hiss's residence sometime after 7:00 p.m., and he informed Rooney that Stephen and Michele Hiss had inquired whether the vehicle could be moved and that he informed them that it could be moved as long as the evidence was preserved and its integrity maintained. When Tittle's clients inquired into whether the vehicle could be moved, they wanted to move it to another location, and Tittle knew this.[5]

An important question that resonates through the mind of any reasonably competent police officer is: why move the vehicle at all?[6] The vehicle was the most critical piece of evidence to the APD's investigation of the hit-and-run accident and caused the death of one person and seriously injured two others. Locating the vehicle was of utmost importance. Moreover, other evidence such as blood and hair samples were definitely in or on the vehicle; and other evidence such as fingerprints, bodily fluids, and minute pieces of evidence could have been in or on the vehicle.

Evidence reflects that the vehicle was moved after Steve and Michele Hiss talked with Tittle. Pamela Hallisey's sworn statement reflects that Steve Hiss told her that the vehicle was moved from the front of the house to the garage on the advice of the attorney ("Steve (according to him, on the advice of his attorney) moved the car into the garage."). Affidavit of Pamela Hallisey at 2. Even though Tittle may dispute that he made this statement, Rooney certainly was allowed to consider this statement as evidence. After all, Hallisey was Steve Hiss's girlfriend, and it was highly improbable that she would have fabricated the statement. The car stayed out of sight in the garage for three days. Tittle knew where it was, and one witness specifically states that it was placed in the garage on the advice of the attorney.

Rooney and others observed the Hisses attempt to move the car to another location under cover of darkness. Tittle later arrives and informs Rooney that he (Tittle) believed it was permissible for them to move the vehicle, as long as the evidence was preserved and its integrity maintained.

Based upon this information, a reasonably competent police officer, certainly one of Rooney's training and experience,[7] could have concluded that Tittle had violated the state tampering statute by concealing or assisting in concealing the vehicle, and evidence contained therein, to impair its availability as evidence in the APD's investigation of the hit-and-run accident. The

5. It only follows that if Tittle advised his clients that the vehicle could be moved, they were going to move it, and Tittle had to have known this. Indeed, it would be absolutely fatuous to infer otherwise, because Michele and Steve Hiss wanted to move the vehicle from the outset and sought specific advice from Tittle whether it could be done. No reason would exist to inquire about moving the vehicle if they did not intend to move it.

6. The court fully realizes that Michele Hiss was not under any obligation to confess her crime to the police, and that Tittle was under no obligation to inform the police what his client had done. This is not what is involved here. The issue is whether affirmative action or steps were taken to conceal the availability of evidence when an official investigation was taking place.

7. At the time of Tittle's arrest, Rooney was a certified peace officer of the State of Texas, has been a police officer for the Town of Addison since 1985, has received training regarding the arrest of persons under federal and state law, and has sought or made hundreds of applications for arrest warrants from judges or magistrates during his law enforcement career.

word "conceal" is not defined in the statute or the Texas Penal Code, so a court looks to its ordinary, common, or plain meaning. The word "conceal" means "to prevent disclosure or recognition of," "to place out of sight," or to "hide." Merriam–Webster's Collegiate Dictionary 238 (10th ed.1999). This is precisely what happened regarding the vehicle in question. First, the vehicle was placed out of sight or hidden when it was moved from in front of the house to the garage. The police had been informed that the movement of the car took place on the advice of counsel. Second, there was an attempt to move the car and place it out of sight under cover of darkness during the night of October 15, 1996.[8] This attempt was not successful because the police intervened. That the vehicle may have been moved only a short distance away to a storage facility is of no moment. Whether it was in a storage facility a few miles away or in Tennessee[9] is of no moment because it still would have been concealed, that is, hidden or placed out of sight from police detection. That Tittle told the Hisses that nothing could be done to alter or destroy the vehicle and that its integrity had to be maintained does nothing to negate the undeniable fact that the vehicle was being concealed to impair its availability as evidence during an official police investigation. The vehicle was found because of police intervention, and would have been hidden and kept from police detection but for the intervention.

Given the totality of the facts and the experience of Rooney, a reasonably competent police officer could have concluded that Tittle assisted or aided members of the Hiss family in concealing the vehicle from the police during an ongoing investigation. Stated another way, even if officers of reasonable competence could disagree whether probable cause existed to arrest Tittle for an offense, Raines and Rooney are still entitled to qualified immunity. *See Malley,* 475 U.S. at 341, 106 S.Ct. 1092. Moreover, the court holds that in light of the facts known to Rooney, as previously set forth, probable cause existed *as a matter of law* to arrest Tittle for a violation of § 37.09(a)(1) of the Texas Penal Code. The evidence necessarily established substantially more than a "bare suspicion" to believe Tittle had committed the offense in question.[10]

The court deems it necessary to address several arguments advanced by Tittle regarding the alleged illegality of his arrest. First, Tittle contends that the affidavit for an arrest warrant contained false and misleading information in that it stated Tittle had told Rooney that Steve and Roger Hiss had "concealed" the vehicle at "counsel's (Tittle's) direction." This is of no moment because the court did not consider or rely on these statements in ruling on the motion for summary judgment. The court assumes these statements were not made by Tittle; however, even without these statements, the court determines, for the reasons previously stated, independent evidence shows that probable cause existed to arrest Tittle for an offense.

---

**8.** From what the court can determine from the record, the attempt to move the car to another location away from the residence took place when it was either dusk or dark.

**9.** The vehicle in question had license plates from the state of Tennessee.

**10.** That the PCA did not state all the facts with the precision and detail that a law professor or constitutional scholar would use is of no moment. There is no question that the facts could have been stated better in the PCA; however, the information known to Rooney established probable cause for him to believe that Tittle had committed an offense, notwithstanding any flaws that the PCA may have contained.

Second, Tittle contends that certain exculpatory evidence was omitted from the affidavit. In particular, Tittle points out that the affidavit does not mention that the Hiss family rented a storage facility in nearby Carrollton, Texas; that Tittle had merely rendered legal advice to the Hiss family in response to their questions; and that Tittle informed the Hiss family that the evidence had to be preserved and its integrity maintained. Inclusion of this evidence in an affidavit for an arrest warrant does nothing to negate the existence of probable cause, and is really quite beside the point. That a nearby storage facility was rented only shows that the vehicle would have been placed out of sight in a facility in a nearby city as opposed to one in some distant location. The bottom line is that the vehicle would have been concealed, regardless of its location.

Finally, regarding the legal advice to preserve the vehicle and maintain its integrity, the court determines that while it addresses the "alter" or "destroy" parts of the statute, the information does nothing to negate that evidence was being concealed or hidden from the police during an official investigation. Knowledge of this advice is simply of no benefit to Tittle with respect to the "conceal" component of the statute.

### 3. Qualified Immunity and Malicious Prosecution

██ Undertaking the three-step analysis for qualified immunity, the court first determines that Tittle has alleged a constitutional violation for malicious prosecution that can be brought under § 1983. The Fifth Circuit has long recognized a Fourth Amendment right to be free from malicious prosecution. *See Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir.1999); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir.1995); *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir.1994); *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir.1992);

*Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir.1988). Given this line of authority, it is quite apparent that the constitutional tort of malicious prosecution was clearly established at the time the decision was made to prosecute Tittle in 1996.

██ The ultimate question thus to be resolved is whether Plaintiff Tittle has established that Raines and Rooney's conduct was objectively unreasonable. The elements of a claim for malicious prosecution include (1) a criminal action commenced against the plaintiff; (2) that the prosecution was caused by the defendants or with their aid; (3) that the action terminated in the plaintiff's favor; (4) that the plaintiff was innocent; (5) that the defendants acted without probable cause; (6) that the defendant acted with malice; and (7) that the criminal proceeding damaged the plaintiff. *See Kerr*, 171 F.3d at 340; *Taylor*, 36 F.3d at 455. To survive Raines and Rooney's motion for summary judgment, Tittle must demonstrate either (1) the record affirmatively establishes each element of the claim, or (2) enough genuine, material factual disputes exist regarding each element that the ultimate finding of that element is the subject of a genuine, material factual dispute. *Kerr*, 171 F.3d at 340. The court concludes, based on the summary judgment evidence, that Tittle fails to establish, or raise a genuine issue of material fact, that Raines and Rooney's conduct was objectively unreasonable because probable cause existed to prosecute him.

Tittle states that the parties are in dispute over element five, that is, whether Defendants Raines and Rooney acted with probable cause in their prosecution of him. Plaintiff Tittle contends not only has he produced evidence that there was no probable cause for his arrest, but that he has also brought forth undisputed evidence that Rooney and Raines ignored and failed

to acknowledge all exculpatory evidence. Defendants disagree, contend that probable cause existed to prosecute Tittle, and contend that they did not ignore exculpatory evidence.

 In the context of malicious prosecution, the Fifth Circuit defines "probable cause" as "the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Kerr,* 171 F.3d at 340 (quoting *Moore v. McDonald,* 30 F.3d 616, 620 n. 2 (5th Cir. 1994)). In other words, to determine whether probable cause exists in the context of malicious prosecution, one must inquire "whether a reasonable officer—at the time when criminal proceedings were instituted and based solely on the facts as the officers honestly and reasonably believed them to be—would believe to a 'fair probability' that a crime had been committed." *Gordy v. Burns,* 294 F.3d 722, 728 (5th Cir.2002) (citations omitted). With respect to malicious prosecution, "the probable cause inquiry does not require a showing that the officer's belief was correct or that it was more likely true than false; rather, the probable cause analysis only requires that [the court] find a basis for an officer to believe to a fair probability that a violation occurred." *Id.* at 729 (citation and internal quotations omitted). Based on the evidence previously set forth regarding the charge made against Tittle, the court has no trouble in concluding the probable cause standard has been met. Contrary to what Plaintiff Tittle intimates, probable cause does not mean that Raines and Rooney were required to produce evidence which established that it was more likely than not that he committed the offense. The evidence must establish more than a "bare suspicion" that he committed the offense for which he was charged. The evidence easily clears this hurdle and establishes significantly more than a "bare suspicion."

The court finds it necessary to address Tittle's contention that Raines and Rooney ignored exculpatory evidence. Regarding allegedly exculpatory evidence, Addison officials were made aware that prior to rendering his advice to the Hiss family, Tittle sought the advice of at least three other attorneys and discussed the Hiss matter with one Dallas County Judge. Addison officials were also made aware that Mr. Tittle underwent a polygraph examination almost immediately after his arrest on the issue of intent and passed the polygraph. Addison police were informed prior to the search of the Hiss residence that Tittle had the vehicle in question examined and photographed by an independent private investigator. Tittle's position is that these facts clearly demonstrate to any reasonable police officer that he had no intent to violate the state tampering statute. Based upon this evidence presented to the Addison officials, Tittle contends that not only did Rooney and Raines have no affirmative evidence that indicated probable cause, but that the undisputed facts indicate that he did not violate the tampering statute. Raines and Rooney counter by stating that after the meeting with Tittle's representatives, Raines and Berry determined that nothing presented at the meeting caused them to believe that the charge against Tittle was not supported by probable cause. On the advice of Berry, the Town legal adviser, Addison police officials proceeded to file the case with the Collin County District Attorney's Office.

The court now addresses specifically each of Tittle's contentions regarding allegedly exculpatory evidence. First, with respect to advice given to the Hiss family and the advice Tittle sought from three other attorneys, none of this advice discusses or references the "conceal" component of the statute. Tittle only focuses on

not altering or destroying evidence, but the statute can also be violated if one conceals evidence with the intent to impair its availability in an investigation. In other words, Tittle did not bring forth any exculpatory evidence that he did not assist members of the Hiss family in concealing or hiding evidence during an ongoing police investigation.

Second, the conversation with Judge Cunningham does not help Tittle. Although Tittle denies he told Judge Cunningham that the "police were not close to solving this case" and "may in fact not be able to solve the case without his client coming forward and making an admission," the police officers were certainly entitled to consider it in evaluating whether to proceed in prosecuting him.

Third, Tittle contends that his passing a polygraph is exculpatory and that the police should have placed more stock in the results of the polygraph. He in essence contends that the polygraph exonerates him. The court disagrees.

Tittle places too much significance on the reliability of the polygraph he took shortly after his arrest. There is nothing sacrosanct or magical about a polygraph, and its reliability or effectiveness has not gained universal acceptance. As the Supreme Court recently observed:

 [T]here is simply no consensus that polygraph evidence is reliable.

To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques.... Some studies have concluded that polygraph tests overall are accurate and reliable. Others have found that polygraph tests assess truthfulness significantly less

accurately—that scientific field studies suggest the accuracy rate of the "control question technique" polygraph is "little better than could be obtained by the toss of a coin," that is, 50 percent.

*United States v. Scheffer,* 523 U.S. 303, 309–10, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). The current state of the use of polygraphs in this circuit is that the *per se* rule of inadmissibility of polygraph results no longer exists. *United States v. Posado,* 57 F.3d 428, 434 (5th Cir.1995). While *Posado* removed the *per se* rule of inadmissibility, the court did not embrace the use of polygraphs with open arms. As the court stated, "It is with a high degree of caution that we have today opened the door to the possibility of polygraph evidence in certain circumstances. We may indeed be opening a legal Pandora's box." *Id.* at 436. The court further stated, "[W]e do not now hold that polygraph examinations are scientifically valid or that they always assist the trier of fact, in this or any other individual case." *Id.* at 434. The court, in removing the *per se* rule against admissibility of polygraphs, simply held that the admissibility of polygraphs must be scrutinized and governed by the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593–95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)[11] and the Federal Rules of Evidence. *Id.* at 429, 113 S.Ct. 2786.

The record does not contain sufficient information for the court to determine whether the *Daubert* standards, or those under Fed.R.Evid. 702, have been met, or that the polygraph results are reliable and relevant in light of the authority previously cited. The court therefore cannot accept

---

11. These standards, which by no means constitute a "definitive checklist or test," include: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the techniques or theory has been generally accepted in the scientific community. *Id.*

the results of the polygraph as competent summary judgment evidence. Accordingly, that Tittle passed a polygraph test really is of no moment insofar as negating the existence of probable cause to prosecute him.

Fourth, that Tittle had an independent private investigator examine and photograph the vehicle is quite beside the point. Once again, actions of the private investigator do nothing to establish that Tittle did not assist or participate in concealing or hiding evidence during an ongoing police investigation. The private investigator could have taken photographs until "the cows came home," and the vehicle could still have been concealed or placed out of sight from the police.

■■■ Finally, although not available to Addison officials, Tittle contends that the expert testimony of Scott Kendall, an attorney and former police sergeant with the City of Dallas Police Department, raises a genuine issue of material fact regarding his claims. The affidavit of Mr. Kendall is riddled with legal conclusions and argument. The court is "the source of the law" and does not need an expert. *Bodzin v. City of Dallas*, 768 F.2d 722, 725 (5th Cir. 1985). Moreover, under Fed.R.Evid. 702, the person designated as an expert must have testimony that will assist the trier of fact to understand the evidence or to determine a fact in issue. *Id.* The designated expert must bring something to the table. A proffered expert must "bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d at 305 (quoting *In re Air Crash at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)). Here, the affidavit of Mr. Kendall's really offers nothing more than what counsel could argue based on the known facts. Moreover, regardless of how well an expert's affidavit is crafted, such an affidavit cannot negate the existence of probable cause when the facts necessarily

show that it exists. For these reasons, the affidavit of Scott Kendall is of no help to the court and cannot be relied on by Tittle to create a genuine issue of material fact regarding the existence of probable cause.

### 4. Qualified Immunity and Conspiracy

■■■ Tittle contends that "Raines and Rooney discussed serving the warrant with each other on October 16, 1996 and came to an unconstitutional conspiratorial agreement that Rooney would serve out a warrant for plaintiff's arrest which intentionally excluded all exculpatory facts and evidence favorable to Tittle." Plaintiff's First Amended Complaint ¶ 16. Plaintiff Tittle further contends as evidence of a conspiracy to prosecute him maliciously, "Rooney, Raines, and Chief McLaughlin disregarded all exculpatory evidence and expert testimony favorable to Tittle, and forwarded the criminal charge to the Collin County District Attorney's [O]ffice for grand jury prosecution." Plaintiff's First Amended Complaint ¶ 21. Raines and Rooney contend that qualified immunity shields them from liability, and since no underlying tort exists, they cannot be liable for conspiracy. The court agrees.

■■■ Liability may be imposed under § 1983 based upon a conspiracy; however, a conspiracy claim is not actionable unless there is an actual constitutional or statutory violation. *See Kerr*, 171 F.3d at 340 (5th Cir.1999); *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir.1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994). A conspiracy by itself is not actionable under § 1983. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir.1990). As the court has ruled that Raines and Rooney are entitled to qualified immunity regarding Tittle's claim of false arrest and malicious prosecution, they are also entitled to qualified immunity regarding Tittle's civil conspiracy claim. Moreover, the court has ruled

that Tittle has not established the violation of an actual constitutional right with respect to false arrest or malicious prosecution. Since there is no constitutional violation, there is no derivative conspiracy claim, and it fails as a matter of law. Accordingly, there is no genuine issue of material fact regarding any claim of conspiracy, and Raines and Rooney are entitled to judgment as a matter of law regarding this claim.

### 5. Qualified Immunity, Probable Cause, and Exoneration

Some may argue that the issue of probable cause is a close call. The court disagrees, and even if deciding the issue is a close call, it presents the kind of matter for which qualified immunity compels a ruling in favor of Raines and Rooney. As the court previously stated, qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. at 341, 106 S.Ct. 1092. Tittle fails to show that Raines and Rooney's conduct falls within either category. Qualified immunity protects those officials from suit, unless it is established that their conduct was objectively unreasonable. Law enforcement officers are often required, on a daily basis, to make important decisions regarding the rights of individuals. While a law enforcement officer's conduct cannot be objectively unreasonable, his fate is not so hapless

that it places him between Scylla and Charybdis.[12] Here the equally repugnant alternatives for Raines and Rooney are "being charged with dereliction of duty if [they did] not arrest when [they had] probable cause, ... [or] being mulcted in damages if [they did]." *Turner v. Raynes,* 611 F.2d 92, 93 (5th Cir.1980) (quoting *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)).

Tittle appears to place a tremendous amount of focus on the no bill by the grand jury. This focus, however, is misplaced. Of course, one of the elements of a malicious prosecution claim is the termination of the criminal proceeding in a plaintiff's favor. Tittle meets this burden by establishing that the grand jury no-billed him on the tampering offense. The determination of a false arrest and malicious prosecution claim, however, is not dependent on the decision of the grand jury. The question is whether probable cause to arrest and prosecute existed, not whether the arrested person was ultimately exonerated or found not guilty of the offense charged. As the Supreme Court aptly stated, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In sum, the court determines, for the reasons previously stated, that Tittle failed to show, or raise a

---

**12.** According to Greek mythology, Scylla was originally a beautiful nymph who was later turned into a monster by Circe, an enchantress. Glaucus, a sea god, fell in love with Scylla; however, she wanted no part of him. When Scylla rebuffed Glaucus's efforts to spark her, he enlisted the aid of Circe to persuade Scylla that she should love him. Circe, however, had ideas of her own and tried to convince Glaucus to love her instead of Scylla. When Glaucus spurned Circe's amorous efforts, she became enraged and turned Scylla into a monster to spite Glaucus.

After being turned into a monster, Scylla lived in a cave overlooking the Strait of Messina, which separates the island of Sicily from Italy. Immediately opposite the cave where Scylla lived was the whirlpool Charybdis. When mariners navigated the Strait of Messina, they were faced with the equally repugnant alternatives of either (1) being devoured by Scylla, or (2) being sucked into and drowned by the deadly waters of the whirlpool Charybdis.

genuine issue of material fact, that Raines and Rooney's conduct violated the Fourth or Fourteenth Amendment to the United States Constitution.

### B. Statute of Limitations

 Defendants Raines and Rooney also contend that Tittle's federal claims of false arrest and conspiracy, and his state claim of malicious prosecution are barred by the applicable statutes of limitations. Tittle disagrees insofar as the federal claims are concerned,[13] and does not address Defendants' contention with respect to the state malicious prosecution claim.

Defendants Raines and Rooney contend that Plaintiff Tittle's state malicious prosecution claim is barred by the applicable one-year statute of limitations. Tittle did not address this argument in his response. In any event, the court agrees with Defendants. Texas law requires that a claim for malicious prosecution be brought within one year from the time it accrues. Tex. Civ. Prac. & Rem.Code § 16.002(a) (Vernon Supp.2001). Tittle was no-billed by the grand jury on March 6, 1997, the date the criminal proceeding terminated in his favor and his malicious prosecution claim accrued; however, he did not file this action until March 5, 1999, one day short of *two* years after the claim accrued. Tittle's state malicious prosecution claim is therefore barred by the applicable statute of limitations, and Raines and Rooney are entitled to summary judgment on Tittle's state malicious prosecution claim.[14]

### IV. *Conclusion*

For the reasons stated herein, there are no genuine issues of material fact regarding Plaintiff Tittle's federal claims of false arrest, malicious prosecution, and conspiracy, or his state law claim of malicious prosecution. Accordingly, the court **grants** Defendants Mark Raines and Steve Rooney's Motion for Summary Judgment. This action is hereby **dismissed with prejudice** against Defendants Raines and Rooney. The court will enter judgment in favor of Defendants Raines and Rooney by separate document as required by Fed. R.Civ.P. 58.

---

13. In light of the rulings on the merits of Plaintiff Tittle's federal claims, the court finds it unnecessary to address Defendants' statute of limitations defense regarding these claims.

14. The elements of a state malicious prosecution claim are the same as those for a federal cause of action. *Compare Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997) (citations omitted) (holding that the elements of a state malicious prosecution claim are: "(1) the commencement of a criminal prosecution against the plaintiff; (2) causation (initiation or procurement) of the action by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) the plaintiff's innocence; (5) the absence of probable cause for the proceedings; (6) malice in filing the charge; and (7) damage to the plaintiff."), *with Kerr*, 171 F.3d at 340. As the court has already determined that probable cause existed to prosecute Tittle, his state malicious prosecution claim necessarily fails.